Good afternoon, Dolores. Good afternoon, Julio. For the benefit of those people in the audience, the Third Circuit has fully gone technical, and one of our colleagues has his chambers in California, and so that's Judge Aldister, and he's joining us now by video, and he can see you all, well, at least those who are arguing. Can you see us, Ruggie? Much better this time. This is a great improvement. Yeah, they did improve it, and the only thing is that ordinarily the panel will recess at the end of the arguments and go to chambers to confer, but because it's difficult for Judge Aldister to recess to chambers, and we don't have the equipment that we have here, at the end of the argument, we'll ask everybody to leave the courtroom, and we will do the conferences in the courtroom, and the representative of the clerk's office will be sure that there's no interruptions. Okay, and so we'll begin with, is it Urcinoli? Am I pronouncing it? Is that soft C? It is, Your Honor. Okay, good. Why don't we hear counsel? May it please the Court, my name is David Fine. I represent Louis Urcinoli, the appellant in this case. Your Honor, may I reserve three minutes, please? Absolutely, that's granted. Thank you. This Court should reverse the dismissal of Mr. Urcinoli's habeas petition because the District Court relied upon a pre-Anti-Terrorism and Effective Death Penalty Act understanding of Rose v. Lundy in a way that ensured that Mr. Urcinoli's timely, fully exhausted claims would never be reviewed by a federal court. Rose v. Lundy held that District Courts could not consider so-called mixed petitions, and that District Courts, therefore, must dismiss those petitions. Under that very case, shouldn't the petitioner have sought to amend the petition to delete the unexhausted claims? Your Honor, he might have, but by the time he would have, the case had already been dismissed, and query whether he would have then had a successive petition problem. Well, that's true, but subsequent to the dismissal, could he not have made a petition to the Court for reconsideration? The answer to your question is, yes, he could have. Is it reasonable to expect that he would have? I think the answer is no, because he's not presumed to have a detailed knowledge of federal procedure. He received an order from the… The counsel did not, the District Court say, those prisoners who misunderstand this total exhaustion requirement and submit mixed petitions, nevertheless, are entitled to resubmit a petition with only exhausted claims. Yes, Your Honor. He did write that. So, he did know that he had that option. Well, Your Honor, what he knew from the District Court… You are correct. All right. I think that the problem with presuming that that cures all ills is twofold. The first is that the text of the judge's opinion, not this very last footnote that simply quotes from Rose against Lundy, the text of the opinion tells him that the petition will be dismissed without prejudice, that he has an available state remedy, and he should go and try to exhaust his claims. That was the direction that he was given by the District Judge. Was the petitioner proceeding pro se, or was it a counsel's petition? He was pro se at that time, Your Honor. And returning, though, to the footnote that Judge Aldisert refers to, which I think is footnote 7 from the District Court's opinion of October 31 of 2003, I think the problem with that is that it does not make clear to him what resubmitting it means. By the time Mr. Ursinoli received this information in a footnote, his petition had been dismissed sua sponte because the State never raised the exhaustion issue. Sua sponte, no notice to him at all, no opportunity for him to argue that, yes, in fact, he had exhausted those claims, and what he was told was it was a dismissed petition. Mr. Fahn, you make a point in your brief that, according to you, the District Court delayed for something like 14 months before it acted, at which point you would have passed the one-year advent. When, under your view, should the District Court have acted? I mean, if we're going to write a presidential opinion, what should we tell the district judges? Are they required to act within how much time in order to permit enough time to file the habeas under advent? Your Honor, respectfully, I don't suggest to the Court that it adopt any such rule. But you want us to say 14 months is too long. Not quite, Your Honor, if I might explain. I understand how things work in district courts, and it would be very difficult for this Court to say you must act on habeas petitions at least to determine if they're mixed within X period of time. Wouldn't be difficult. We could do it. The question is should we do it, and if so, what should we tell them? Well, and I'm not sure that that's what this Court needs to do. I think instead what the Court needs to recognize, and I think that Justice O'Connor recognized it in that penultimate paragraph of Rines v. Weber, and that is that oftentimes simply through congestion in the courts and the time it takes these things to percolate through, by the time a district judge gets to an otherwise timely petition, the statute of limitations under AEDPA will have passed. And so, therefore, instead of simply reflexively dismissing the petition under Rose v. Lundy, which was a fine rule until AEDPA and then no longer became a fine rule, what the Court should simply do is issue an order not unlike what the Court does under Miller or Mason and what has been approved by the Supreme Court in Castro. Simply enter an order saying this is a mixed petition. You can't point to anything that the district court did that was wrong when it decided the case on the 14th month. The period itself was not improper. Your Honor, the question is do we take issue with the fact that it took Judge Brown 14 months to get to it? Yes. The answer is no. I clerk for a district judge, and I understand that these things do take time. Nor was there anything wrong about under Rose v. Lundy his dismissal of the petition because it was a mixed petition. No, Your Honor. I disagree there, Your Honor, if I might. And I'm sorry, Judge Slaugher. No, go ahead. What I was going to say is this. I would take issue with two things. The first thing, Your Honor, is that he gave no notice to Mr. Ursinoli. And this Court has said, for example, in Bendolph, United States against Bendolph. Was there a requirement at that time that he give notice to petitioners that he was going to dismiss the petition? There's nothing in this Court's precedents or in the Supreme Court's precedents, but I think that it's fair to say that given the extreme consequence of that dismissal, what he should at the very least have done was to say to Mr. Ursinoli, the Court perceives your petition as being a mixed petition, something like a show cause order, if you will. You have 20 days to tell us if somehow we're mistaken. Otherwise, it's a sui sponte dismissal. I understand, but we can't say that the district court erred in its procedure and in its decision. If we're looking, Your Honor, and I think we need to clarify what we're talking about, there are two district court orders. One of them is on appeal. The later one, the second habeas petition, was dismissed. That's what we're here on review of. However, obviously, we need to discuss what occurred with the first petition, and what I would say is with the first petition, the two ways that I would posit that the district judge erred were, one, he didn't give notice and any opportunity to be heard, and second, the language of his order, not unlike in Graf against Moore, an unpublished opinion of this Court, the language of his order suggested at least to Mr. Ursinoli that he could go back to the state court, exhaust his remedies, and come back to the district court when, in fact, that wasn't the case. This is an issue that is not going to reoccur. I mean, now presumably all the district judges will know after Rimes that they can stay and obey, right? I disagree, Your Honor. Well, I disagree with the first premise of your question, which is that it's not going to recur, and if I might offer an explanation for that, Your Honor. It seems to me that once the Rimes decision came out from the Supreme Court, the district judge will know, and we may reaffirm that, reassert it. We don't have to reaffirm it. They'll know precisely what their options are. Your Honor, I think that's not exactly so, and it's for this reason that I say that. Go ahead. There are a number of circumstances that can arise. An inmate comes to district court, and he presents a mixed petition, and the district judge says, your petition is mixed. Now, the district judge may, in rare circumstances under Rimes, stay and obey. Only in rare?  It says exceptional, Your Honor. It does. And what happens then in the case where stay and abeyance is not, in fact, appropriate? That's what Justice O'Connor was talking about in the penultimate paragraph of Rimes. In that case, the district judge has to allow the inmate to carve up his own petition and to ask the district judge to keep the exhausted claims and dismiss the unexhausted claims because otherwise, if the inmate is simply dismissed, his petition is dismissed, he's thrown off into the ether, and he'll never be able to come back. What will happen is what happened to Mr. Ursinoli here. Mr. Ursinoli had two claims that are undisputably exhausted. They were timely presented. He did it with diligence. And because they happened to be associated with unexhausted claims, they were tossed out. And now when he comes back, they're gone. He will never get federal review, even though, with the exception of guilt by association, he did everything right. That can't be right. That's not what Rose against Lundy had in mind. But Judge Sloboda was basically, as I understand the question, saying this is unlikely to occur again. How is this going to occur again? You can also factor in the Bendoff decision, which says that you can't dismiss a petition to respond to without giving notice to the petitioner and an opportunity to be heard. That's our current law. So in light of that, together with Rhines, how is this likely to reoccur? I think it is likely to recur, Your Honor, and I'll explain why. There are going to be those circumstances. I know that time may run out, but we're talking actually a lot of odor dictum of what's going to happen. I'm interested in your first statement in your summary that the court erred. Now, you said he erred by what, not notifying him? Well, Your Honor, let me clarify what I meant. We're talking here about the second— First of all, tell me what you said, and then you clarify. What I said at the outset of the argument, Your Honor? No, just before this dialogue began about Rhine, you said, one, the court erred, and secondly, the language in the order. Yes, Your Honor. If we're looking at the first petition, the dismissal of the first petition, which is, of course, not on review before Your Honors, however, it's important for purposes of discussing equitable tolling. He erred in two ways. One was that he gave no notice. And I think that in Bendolph and under Granberry— But doesn't that go to the equitable tolling issue in this case as opposed to whether the district judge erred in what he did? I think it goes to both, Your Honor. Because, for example, in Bendolph, you'll recall in Bendolph there were two cases that were consolidated before the court. One was Bendolph. One was Otero. And in Bendolph, the determination was, yes, it was all right to— But at the time that Judge Brown made his decision, I don't know that there was a standard that he deviated from. I don't know that there was a law or case that he did not follow. He did what he was supposed to. That's a point that I made. He did what he was supposed to do, which is, under Rose v. Lundy, dismiss a mixed petition. So where is the legal error? And, Judge Clover, I see my light is on. May I go ahead and— If you're saying it's an error, is it a constitutional error? And if so, what case are you relying on? No, Your Honor, it's not a constitutional error. It's a procedural error along the lines of the error in Bendolph. If I can respond, then, to the question posed by Judge Fuentes, I think that the answer is that at the time Judge Brown heard the first petition and dismissed the first petition, there was no law that said what he had to do. That doesn't mean that he didn't err. This Court makes new law all the time and applies it to existing cases. Bendolph, in fact, was such a case. So that's not the issue, I think. But Bendolph was after Judge Brown made his decision. Granberry was before. There were cases that said that you don't sua sponte do things in the habeas arena without allowing notice and an opportunity to be heard. Go ahead. Finish the sentence. Thank you, Your Honor. And so I think that there was an error there. But I think that what we want to really be looking at is the second order. That's what's up on review before this Court. And the problem there was that knowing what happened and with the benefit of Bendolph and with the benefit, by the way, of Rhines, because they had already been decided, Judge Brown, nonetheless, dismissed the petition, refused to find equitable tolling, even though he could see what had happened with the previous petition. And that, in fact, there was a basis there for equitable tolling because the propinquity of the unexhausted claims and the exhausted claims simply ended up working mischief that the Court in Rose v. Blondie certainly never asked for. Mr. Fine, you'll come. We'll hear you back on rebuttal. But I'm going to ask you on rebuttal also to think about whether the district court should look at the claims that were unexhausted or the claims that the prisoner now tries to get before the Court and decide whether they have any merit or not. Should that go into the consideration of how to handle the matter? I don't expect you to answer that now, but I don't see that issue in the briefs, and I'd be interested in your reaction. And, Your Honor, I'll be prepared on rebuttal to answer the take-home question. Okay. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court, Roberta D. Biasi from the Ocean County, New Jersey, Prosecutor's Office, appearing on behalf of all appellees. Ms. Biasi, this panel sat on Tuesday, the other half of this sitting, and I commented about how delighted I was that the first three of the four cases all had female lawyers arguing. That's such a change from when I first came on this Court and sat with Judge Aldersert in those days. So, welcome. Oh, good. Thank you, Your Honor. And one from Toms River, New Jersey, too. This is my first appearance in this Court, Your Honor. Thank you very much for the welcome. We're delighted to have you. Now let's hear what you have to say on the case. Okay. My first order of business is to disagree with Mr. Fine's opening statement that the district court relied upon the pre-AEDPA case of Rose to ensure a non-review of this matter, because, in fact, the district court relied on more than just the Rose v. Lundy decision, which is obvious in the Court's written opinion. Before I go into the cases that the Court did rely upon and why his decision was correct, I just would like to note for the Court that when this petitioner went back to the state court, he still did have the opportunity to be heard on those unexhausted claims. He was passed a five-year state court limitation to be heard, but, in fact, the Court did hear him on the merits of that claim, then decided that the claim was not worthy of being granted because those claims had already been adjudicated by the Court. There's a factual issue, isn't there, with respect to what the state court did, whether it considered the unexhausted claims or not? And that's not in the COA, and I don't even know whether we would have jurisdiction to – we can expand the COA. I don't even know if we have jurisdiction to consider that. Your Honor, if the state court did not consider the unexhausted claims as our position, that's because he did not articulate them when he went back to the PCR court. I have in my notes here written out what he claimed in his second PCR petition and compared them to the grounds that the district court said were unexhausted and they do not match. He did not do what he set out to do. Although he had the opportunity to do so. Yes, exactly. Are you referring to the unexhausted claims that were present in the first petition? Yes, Your Honor. Okay. I was curious about Judge Brown's initial decision dismissing the mixed petition, as opposed to other options he may have exercised. Well, I think there's a contention in the brief, at least, by the appellant petitioner that he did exhaust those claims. I think that's in the brief. Am I wrong? In that respect, Your Honor, then there would be a factual contention. The state submits that it's obvious upon a comparison left to right that he did not. But as Mr. Fine said in his brief, words are subject to different interpretations. However, the state submits it's quite obvious that he did not exhaust when he returned. Well, what do we do with that when one counsel says it was exhausted, one counsel says it wasn't exhausted? The COA, was that raised in the motion, the request for a certificate of appealability? What do we do with the only issue that the COA was granted on was the equitable tolling issue. Yes, Judge, that's correct. At this moment, I do not know if that was raised in his motion. Okay. Go ahead. Well, looking at it that way, should there be equitable tolling? Is the petitioner entitled to equitable tolling? Your Honor, to our position, he's not for several reasons, but I was not going to address the certificate of appealability in that respect. Well, but it's up before us on equitable tolling. Yes. Okay. And so Judge Fuentes asked you, what should our view be on equitable tolling? With regard to the factual decision of whether he exhausted his claims? No, whether he can go back and have his claims heard before Judge Brown, his exhausted claims. Oh, only the exhausted ones, Your Honor. I'm sorry, I misunderstood. Well, of course, Mr. Fine, they have a different view. Right. But from your perspective, the unexhausted claims are unexhausted. It's a mixed petition, and the question is, could he be heard on those that were exhausted? Your Honor, it's our petition that while he could be, he need not be in this case, and he still would not suffer any prejudice or unfairness because there are only three of those exhausted claims. Two of them are very similar. They deal only with the alleged inadequacy of his counsel. Okay, but you're getting into the merits of the claims themselves. Exactly, Judge. He didn't have a chance to present the claims. He didn't have a chance to be heard as to whether he could go forward with the claims. I understand that. I understand that the district court chose for him a course of action where he had other options that might have benefited him more, which was the exhausted claims. The district court said, go back to the state court, very sorry, I can't hear any of your claims. So the district court made a decision. Well, Your Honor, the district court dismissed the matter. It chose for him a course of action that might not have been the best from his standpoint. Correct, Your Honor, but I would refer the court to the same footnote and also to the Mason warnings contained in the original decision to which Judge Aldisert referred earlier as being adequate notice to this petitioner. Under Plyler, the court is not required to give this petitioner advice. He's merely required to act in accordance with the law and allow the petitioner to pursue whatever options he has. But he's not asking for advice. He just wants a chance to be notified of the action that the court is going to take. He wants a chance to present his view. He's not asking for advice about the statute of limitations. But, Your Honor, when this was dismissed, he had noticed that it could have been dismissed under the Mason warnings and that he did not approach the court with only the three remaining exhausted claims. Which is why I asked, raised the question that nobody really has raised. Should the district court be given the opportunity to decide whether the exhausted claims are frivolous or not by looking at them? In other words, the district court didn't see them, and picking up on Judge Fuentes' ... I'm not saying that it necessarily should, but what should we do with that when the district court didn't ... when nobody looked at them to decide whether there was anything to them? Your Honor, as a general rule, the way the practice is approached in my office is, generally speaking, although I don't want to commit myself to this off the top of my head, generally we would not have an objection to such a review, cursory review, which is all it would take in this instance to determine that those are also meritless in a habeas petition. What would be the procedure by which that was done? Wouldn't it have to be that it goes back ... if that should be done, that it goes back to the district court to decide on the equitable tolling issue, and the district court may decide no equitable tolling. It wouldn't be equitable to toll in this case because there's nothing to the claims. Or it would be equitable because there might be a germ of something there. And you say your office wouldn't object. Potentially, Your Honor. If we would do that, we would be making new law. We always do. Is that right? Yes. Okay. Well, I am correct, Your Honor, but in some cases we have, as counsel pointed out in this case, not ... certain affirmative defenses because we did not mind for certain issues to be decided on the merits regardless of the potential procedural bar. Had Bendoff been in effect at the time that Judge Brown decided this case, would his decision not have been in error? His decision would not have been in error, Your Honor, but he would have given the notice that is now required by Bendoff, which was decided two years after. But he wouldn't have given that notice, so his decision would have been in error. Isn't that accurate? Bendoff requires a court, when it's sua sponte, dismisses a petition, when it's about to, to give the petitioner notice and an opportunity to be heard. Yes, Judge, so then the dismissal would not have been improper, but with the accompanying notice. So you say that notice was given to the petitioner that I am about to dismiss your petition because it's a mixed petition. In this case, Your Honor, no, other than what was in the original Mason order, which touches upon that subject of exhausted and unexhausted claims. But you're satisfied that the petitioner in this case had noticed that his petition was about to be dismissed because it was a mixed petition? When Your Honor says about to be, no, but that it could eventually be dismissed, yes. Well, that's true in any time of petition, I suppose it's filed, but Bendoff requires notice and an opportunity to be heard. I don't, in my search of the record here, does not show that Judge Brown gave Urshinole notice and an opportunity to be heard. My question was, had Bendoff been the law at the time that Judge Brown decided would not have his decision been in error because he wouldn't have followed Bendoff? He would have had to follow Bendoff, Your Honor. I just hesitate to use the word error because, again, the dismissal is wrong. Incorrect. The reason I ask, of course, is the extent to which we should consider that in the equitable tolling issue. Well, oh, in this case, Your Honor, it would not be very relevant because of other factors that apply in these particular circumstances. As Judge Sloboda was alluding to earlier, this is not likely to recur as it did in this case because of the peculiar facts of this case. And under those circumstances... But if you have an event that has a substantial effect on one's rights, does that not factor into the equitable tolling equation? Yes, unless no prejudice occurred and the issue is moved. Well, prejudice, of course, occurred. This petition was dismissed. But then, Your Honor, the analysis of whether prejudice occurred goes to what would have happened had it gone forward. But that requires us to get into the merits of the petition. I'm not sure that we can do that at this point. And that's why we're back to what Judge Sloboda said. Because he did have unexhausted claims. And certainly, those claims could have gone forward. Right? The exhausted ones, Your Honor? I am sorry. I misspoke. Exhausted claims. Those claims could have gone forward. Yes. You agree with that? Yes. Now, we are not bound by our non-presidential opinions, by definition. And that's the subject of all sorts of internal consideration in this Court. And I'm strongly in favor of that. But the parties have noted that in an unpublished opinion, in Graf V. Moore, the Court applied equitable tolling. Our colleagues did. And it's cited in the briefs. And all I want to know from you is, what is different in this case, factually, than was in Graf V. Moore, which was decided last year? Your Honor, the extraordinary circumstances do not exist here that existed in Graf. The Court in Graf said that tolling is appropriate if the defendant actually misled the plaintiff. We don't have any actual misleading here of the plaintiff by the defendant. Or if the plaintiff was in some extraordinary way prevented from asserting his rights. He was never prevented from asserting his rights in his initial petition. It was his error that caused this problem that we're now before the Court on. He was not prevented in an extraordinary way from filing his first petition correctly. I agree with you 100 percent, because I don't think that Judge Brown misled the petitioner in any way. But that's a different standard from the extraordinary circumstances standard. I think you're mixing two different standards. The extraordinary circumstances may very well apply where a petition is dismissed without notice and an opportunity to be heard. That's my view. Perhaps, Your Honor, there is a case also that the name escapes me right now, but specifically says that extraordinary circumstances do not equal the initial failure to exhaust remedies. So that by himself would not bring him over the threshold. And also, the other, I think, circumstance was if the petitioner properly filed pleadings but in the wrong forum, and that's not the case that we have before us here today. Does it matter that he was prosaic? Well, Your Honor, his pleadings would obviously be viewed more liberally. But in this case, again, it does not, because had the petition not been dismissed after the year had run, and he had gone back to this court with the grounds that he pled in the second PCR petition, we would still be in the same place because, again, it's our position he did not properly exhaust. So it makes no difference in this case, and that's why the state argues there ended up being no prejudice, despite the bumpy road that we took to where we are now. The end result would have been the same. Supposing we were to disagree with you on equitable tolling and prejudice, and we were to say that equitable tolling applies, what claims would he be entitled to present before Judge Brown? At the most, the three exhausted claims, Your Honor. And what were they? He was convicted of murder and conspiracy to murder. I mean, this is not a little criminal out there. Oh, exactly, Your Honor. I mean, this is pretty serious. Two of them dealt with his trial attorney's advocacy, the test under Strickland v. Fritz, as to the trial counsel's competency. You mean not ineffective assistance of counsel? Yes, Judge. Ineffective assistance. Based on a new defense, however, the other one had to do with... That's not subject to the morning meeting. That's it, that's it. I was just saying, but ineffective assistance of counsel claim is not subject to the one-year effort rule, is it? I mean, that comes up as a collateral attack. It's not subject to the one-year AEDPA limitations, Your Honor? No. I was not aware of that. I thought that it was, along with any other claim that is suitably filed within a petition. Anyway, two of them... Maybe it is now, after AEDPA. I thought so, Your Honor. Yeah, you may be right. I could be wrong. You may be right, yeah. Two of them dealt with trial counsel's alleged ineffectiveness, and the other one dealt with denying the motion for a judgment of acquittal on three of the counts in the indictment, which dealt with not the main murder, but the threat to murder a witness who was going to testify against him. Conspiracy and threats to murder that witness. That's the second. That's the other. He was convicted of that, right? He was convicted of all of them, Your Honor. That is one of the three grounds that was exhausted, but that does not pertain to his trial counsel. That pertains to the court's failure to deny a motion to acquit at the end of the State's case. Do you agree with Mr. Fine that this issue, this issue of equitable tolling may reoccur? The issue, well, certainly, Your Honor, anything could happen, but in light of the cases that have come out in the five years since the district court dismissed this first petition, it's unlikely. Of course, it could happen, and then the protections of Bendolf would now apply, and the court would decide whether to grant equitable tolling based on the three criteria in the Rines case, which we, I would argue, wouldn't have applied in this case in any event. So, yes, Your Honor, it could happen, but it would be rare, and it would be taken care of by the other cases that now exist. I'm going to take you beyond your rent, because this is an important issue for this court, and to the extent we give advice to the district judges. Do you agree that the district court should issue a stay-and-obey order only in extraordinary circumstances? I mean, there is language like that in Rines. It doesn't say extraordinary, but it says it shouldn't be the usual situation. What is the prosecutor's view of that? Based on the three criteria that exist in Rines, they seem to be fair criteria to both sides. There is language in these cases that say tolling and abeyance should be done sparingly. It should not be a run-of-the-mill remedy, or a run-of-the-mill event, and the state would agree with that. But that would go, wouldn't it, to how long the district court waits to issue its dismissal? Because in this case, when it was 14 months, I mean, it might be different if the district court issued its order in three months, and he still had all that time as distinguished from 14 months. Isn't that right? It may, Your Honor, but then those time issues could recur again, even if it were issued at the three-month point. Then we're going to be dealing with how soon after did the petitioner refile? Did he refile correctly? But then it's the petitioner's fault. Yes. Then the responsibility is that if the petitioner delayed, we have an entirely different situation. Yes, Your Honor. Yes, okay. It's interesting. Thank you. You're welcome, judges. Thank you. Come again. Thank you. Mr. Fon. Mr. Fon, are you appointed, counsel? I am, Your Honor. Pro bono. Pro bono. Well, we thank you for that. Thank you, Your Honor. It's so important for good lawyers to be willing to do that. Well, we appreciate the opportunity. Yeah. I'd like to begin by answering Judge Slobiter's take-home exam question. Yeah. I think that the answer is that the district judge has the ability to do that. Whether this court should instruct that the district court do that, I think is another story because it's a discretionary issue. Do what? Do what? I didn't hear you. My question was whether the district, at the end of his principal argument, whether the district court should consider the merits, if any, of the claims. I understand. I understand. In deciding whether to grant equitable tolling. And my answer, Judge Aldersert, was that I think that it's always within the discretion of the district court now to do that, but I don't think that this court needs to instruct district courts, or Judge Brown in this case, particularly to do that. I'd like to address just a few issues in rebuttal. The first is the question of will this recur again? And I think that the answer to that is yes, it will. And let's go back, if we might, to Rines v. Weber. And I'll stand corrected. I think I said that Justice O'Connor used the word extraordinary. She said very limited, I think, is the language, because I think I did what Judge Sloviter did and looked through the opinion very quickly. Nonetheless, it is something that's to be sparingly used. What are the circumstances of inmates who have mixed petitions and who do not qualify for stay in abeyance? Those are the people like Mr. Ursinoli. And those cases will always occur because they may not meet the standard. What happens with those people? What Justice O'Connor told us in the penultimate paragraph of her opinion in Rines was they should be allowed to carve up their own petitions. That did not happen here. That's what needs to happen in this case. Obviously, Judge Brown did not have the benefit of Rines when he issued his 2003 opinion, but certainly when 2006 rolled around and he dismissed the second petition, then he had the benefit. So if you represented Mr. Ursinoli before Judge Brown when he made his decision and he said, I see unexhausted claims here, and this is a mixed petition, I'm about to dismiss it, you would have said, wait a second, Judge, I would like to, what would you ask him to do? I would say, Your Honor, I'd like, number one, to argue that they are exhausted because he disagrees with you. And, Your Honor, I respect that decision. Now, having made that determination, I know that the statute of limitations is wrong. So, therefore, I'd like to ask that you allow me to carve out the unexhausted claims and then you go ahead and look at the three that you have found undisputably are exhausted. You wouldn't ask him, oh, go ahead. I might ask him to stay in abeyance. But she said only in limited circumstances. That's right. Okay. Well, and I wasn't, I have a follow-up, actually, because I wanted to see where you stand. If that's the case, then if you were to go, if we were to agree with you, the only thing that would remain are the three exhausted claims. Well, I think that. If this goes back to Judge Brown, it would go back for those three claims. I think that there would be a decision for either this Court or for Judge Brown to make. And, Judge Fogler, may I go ahead? Yeah, go ahead. Thank you. Clearly, those three counts, those three claims should go back. I think there's no question about that. They were exhausted. They were timely, everything else. But I think that there would also be a question for Judge Brown about whether the other claims that were presented in that second petition had been exhausted by the time the second petition was filed. Because if we're equitably tolling, then we have relation back, and we have claims that are timely and exhausted. Now, I realize that that sounds as though it's giving something of a windfall to Mr. Arsenoli. But, of course, he didn't create this circumstance in the first place. I'm not sure, because I'm not sure that he had that right when Judge Brown made that first decision. And said some were unexhausted. You could have appealed or asked for re-argument on the fact that there were unexhausted claims. I mean, what you're saying is that if, and that's a big if, if we were to grant equitable tolling, Judge Brown should still consider the claims that he said were unexhausted. Do I not understand you? Well, I think, Your Honor. I mean, is that what you're saying? The short answer is yes. Okay. The slightly longer, lawyerly answer is that I think what the Court would do is remand the case with instructions to Judge Brown to vacate the dismissal and equitably toll the time. And then to figure out if, in addition to those three claims, there are any others that he's going to hear. And I think that, to some degree, that's going to be within his. Thank you. What reason should we, what, assuming that we agree with you, what is the reason that we give in saying that there was equitable tolling? The reason, Your Honor, is that the constitutional right to federal habeas review ought not hinge on the propinquity of unexhausted claims with exhausted claims. This rule, this total exhaustion rule of Rose against Lundy, simply didn't matter until the DPA. Okay. And now, of course, it does matter, and he should have been allowed, Mr. Ursinoli, the opportunity to either ask for stay in abeyance or to excise the unexhausted claims. But either way, the mere fact that they live side by side in one petition is no reason for them to defer. You would want us to give retroactive effect to Gundolf and Ryan. Thank you very much. I do, Your Honor. And just to clarify a very quick point. I think your time is up. All right, Your Honor. We have a lot of cases after you. I see that. And I'm probably very eager for me to be done. Thank you, Mr. Farris. Thank you very much. Thank you, Your Honor. For undertaking this. Certainly. We're all here. We're all here.